

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4151-A
Re: (a) Value of gas for tax pur-
poses where producer operates
his own gasoline plant. (b)
Measure of tax where producer
uses part of residue gas for
lease operations.

After careful reconsideration we have concluded
that we were in error in our answers to your second and
third questions as set out in our Opinion No. O-4151. We
accordingly amend said opinion to that extent and hereby
withdraw Opinion No. O-4151 and substitute therefor the
following:

### Question I

"A producer owns twenty wells, also owns
his own gasoline plant, taking gas from no wells
but his own. The prevailing price for the same
kind of gas in the same field is 20% of the
gasoline content per charcoal test at the price
quoted in a trade publication plus 50% of the
residue sales; his royalty contracts call for
pay at 1/8 of 'market value' and he has been
paying under this contract in the past at the
prevailing 20% plus 50% above mentioned. Would
the tax accrue on 20%, 60% or 100% of the gaso-
line made as per test or on actual recovery;
and at actual sales price or on the price quoted
in a trade magazine, and on 50% or 100% of the
residue sales? If he trades the residue gas to
a carbon company for 30% of the carbon made,
would the value of said 30% be taxes at 100%
of money value?"

In the situation presented in this question the roducer processes his own gas, wherefore there is no sale f the gas as produced upon which the value thereof may be ased. It is therefore necessary to ascertain the value of his gas as produced, and before it is processed in the gasline plant, under the formula of H. B. No. 8, designated s the "second measure" of Rule 1 in our opinion No. 0-3516, hich reads:

". . . any sum of money that such gas will reasonably bring if produced and sold in accordance with the rules and regulations of this State."

As stated in said opinion No. 0-3516,

"An application of said rule 1 (General Definition of Market Value) calls for a determination by the Comptroller of Public Accounts of 'market value', that is, the Comptroller of Public Accounts rust examine all available evidence, including sales of other gas in the same gas field, that show or tend to show 'market value' and from that evidence make a finding of fact as to whether or not the gas has been sold for its 'value' or what the gas would reasonably bring if it had been produced and sold in accordance with the laws, rules and regulations of this State."

You state that "the prevailing price for the same :ind of gas in the same field is 20% of the gasoline content per charcoal test at the price quoted in a trade publication plus 50% of the residue sales". If you have found that this is the market value of the gas in this field, the tax should be based on such value, even though it be based upon apparently arbitrary measures such as "the gasoline content per charcoal test" and the price of gasoline which is "quoted in a trade publication," irrespective of the actual amount of gasoline extracted, or the price at which the gasoline is actually sold. We wish to point out, however, that the fact that a majority of the gas in such field is being sold under long term contracts whereunder the producer receives 20% of the gasoline by charcoal test and 50% of the residue gas sales and is paid for his share of the gasoline at the price quoted in a trade publication, is not necessarily determinative of the present market value of the gas. The market value

of the gas might conceivably fluctuate, although most of the gas continued to be sold at fixed prices under long term contracts. A few recent contracts for the sale of similar gas in the vicinity would be a more accurate indication of present market value than would the terms provided in contracts made several years ago under which most of the gas in the field is still being sold. Where gas is sold by the producer, his tax is based upon his gross receipts therefor (as provided in Rule 3 or 4 of Opinion No. O-3516) regardless of when he may have entered into such contract of sale. If his gas is sold under a long term contract his tax will continue to be based upon the terms of his contract, irrespective of fluctuations in the market value of the gas in the field. But where, as in the situation under consideration, the producer processes his own gas, his tax is to be computed upon the market value of the unprocessed gas as you may find the same to be during the month for which the tax is payable. If you find such market value to be a component of "20% of the gasoline content per charcoal test at the price quoted in a trade publication plus 50% of the residue sales", then you should use such factors in computing market value. If on the other hand, you find the present market value of the unprocessed gas to be based upon the actual recovery of gasoline at the price for which it is actually sold, then these are the proper factors for you to consider in determining the market value of the gas as produced.

The provisions of the royalty contracts are controlling as to the value of the 1/8th royalty interest, but the price received by the royalty owners would not necessarily determine the market value of the lessee's 7/8ths of the gas. See answers to first, second, third and fourth questions in Opinion No. O-3516.

Your problem here is to determine the market value of the gas at the mouth of the well. You might find that there is a present market for gas, as produced, in this field at a sum certain per thousand cubic feet in which case you may use such market value as to gas which is processed by the producer and disregard any existing contracts for the sale of gas providing for a percentage of the gasoline and residue gas derived therefrom, in arriving at the value of the gas for tax purposes.

Honorable George H. Sheppard, Page 4

## Question 2

"If residue is sold at 4¢ per MCF, and the producer uses some residue in lease operation, would the gas he uses be taxable at 4¢ or at 2¢ assuming that said producer receives 50% of the 4¢ residue sold by the operator?"

We assume that in this case the producer sells his gas to the operator of the gasoline plant under a contract whereby the producer receives a percentage of the gasoline and other products extracted, plus all of the residue gas which he may need for lease operation, plus 50% of the proceeds from the sale of the remaining residue gas. In such case the taxable value of the gas as produced is to be determined by that portion of House Bill 8, Article II, designated in our opinion No. O-3516 as "rule 4", which reads:

"In case the whole or a part of the consideration for the sale of gas is any portion of the products extracted from such gas, the tax shall be computed on the gross value of the products received plus all other things of value received by the producer." (Emphasis ours)

In this instance the residue gas received by the producer from the gasoline plant and used by him in lease operation is one of the "other things of value received", mentioned in the statute. This residue gas, computed at its market value (which may or may not be the same as the price for which the residue gas is sold by the gasoline plant) will be one of the factors in determining the taxable value of the gas "as produced". We are assuming that this residue gas used by the producer in lease operation is not being injected into the earth for storage, repressuring or lifting oil so as to bring it within the exemption of "rule 6".

In the situation presented by your second question the taxable value of the gas "as produced" will be the sum of the following items:

(1) The gross value of the producer's share of gasoline and other products extracted.

Honorable George H. Sheppard, Page 5


     (2)  The market value of all the residue gas used by the producer for lease operation other than that injected into the earth for storage, repressuring, or lifting oil.

     (3)  Fifty percent of the gross proceeds of the residue gas sold by the gasoline plant.

### Question 3

     "In case there is no market for said residue, and some would be vented into the air at the plant, would the use of part of such residue by the producer still be taxable? If the gas had been taxed at the minimum rate of 11/150 of 1¢ per MCF at the well head, would the residue used by the producer be taxed again?"

     Replying to the first part of your question, we assume that there is no market for <u>all</u> of the residue gas, since you state that <u>some</u> of the residue would be vented into the air. However, the residue gas used by the producer has a "use value" to him, as it saves his having to buy fuel or power in other form, such as electricity, oil or gasoline. Such value of the residue gas could be determined by the prevailing prices paid by others in the field for similar uses. Though there be no market for <u>all</u> of the residue gas available, it does not follow that the residue gas actually used by the producer is worthless, or that he would give away residue to his neighbor without charge. Only in the event that you find gas being regularly given away free in the field, should you consider the residue gas used by a producer in lease operation as valueless. While the residue gas itself is not taxable, the value of so much thereof as the producer uses should be taken into account in computing the taxable value of his gas "as produced".

     As to the second part of your third question, we assume that the minimum tax has been paid by the purchaser on the basis of his settlement with the producer. As stated above, where the producer sells his gas for a percentage of the products extracted and the residue gas, the value of the gas "as produced" is to be computed under "rule 4" by the sum of three items: (1) the value of the producer's share of the liquids extracted, plus (2) the value of the producer's share of the residue sold, plus (3) the value of the residue

used by the producer in lease operation. This third item should be considered as part of the aggregate value of the gas "as and when produced". If the aggregate value of the three items is 1.41¢ per M.C.F. or less, the minimum tax of 11/150 of 1¢ per M.C.F., paid by the purchaser would be the correct tax. But if the sum of the three items brings the value of the gas "as produced" to more than 1.41¢ per M.C.F., then the tax would be payable at 5.2% of such value and the producer would still owe the tax on any value of the gas in excess of 1.41¢ per M.C.F. after the purchaser had paid the minimum tax.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Walter R. Koch*

Walter R. Koch
Assistant

APPROVED DEC 13, 1941

FIRST ASST
ATTORNEY GENERAL

WRK:mp


APPROVED
OPINION
COMMITTEE
BY
CHAIRMAN